UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES J. WOODALL,

      Petitioner,

v.                                          Case No. 8:09-cv-2510-T-23AEP

SECRETARY, Department of Corrections,

      Respondent.

_____/

**O R D E R**

      James J. Woodall petitions for the writ of habeas corpus under 28 U.S.C.
§ 2254 (Doc. 1) and challenges the validity of his state conviction for lewd and
lascivious exposure.  Woodall alleges several grounds of both ineffective assistance of
trial counsel and trial court error.  Numerous exhibits ("Respondent's Exhibit __")
support the response.  (Doc. 10)

**FACTS**[1]

      Yvonne Bayoff and her six-year-old daughter were shopping in a K-mart store
in Pasco County, Florida.  Woodall encountered the child and exposed his penis to
her.  Bayoff confronted Woodall in the store before Woodall left.  A store
surveillance video captured the confrontation.  Bayoff and the victim reported the

_____

[1] This summary of facts derives from Woodall's brief on direct appeal.  (Respondent's Exhibit 2)

incident to the police.  Both Bayoff and the victim described the perpetrator to a

police sketch artist who created a composite drawing.  The police later received

information resulting in Woodall's becoming a suspect.  Bayoff subsequently

identified Woodall in a photographic line-up and the police arrested him.  A jury

convicted Woodall.

## I.      PROCEDURALLY BARRED GROUNDS

### Grounds One and Two

In ground one Woodall contends that the trial judge erred by not giving the

jury a cautionary *Williams*[2] rule instruction after the close of the evidence.  In ground

two Woodall contends that the trial judge erred by instructing the jury that the

*Williams* rule evidence of Woodall's prior conviction for lewd and lascivious

exhibition could be used to corroborate the victim's testimony.  Woodall argues that

these two errors violated his federal right to due process.

Federal habeas relief for a person in custody pursuant to the judgment of a

state court is available only on the ground that the custody violates the Constitution,

laws, or treaties of the United States.  28 U.S.C. § 2254(a).  *See also Jones v. Goodwin*,

982 F.2d 464, 471 (11th Cir. 1993).  Woodall, relying only upon state law, argued in

his direct appeal that the trial judge committed fundamental error by improperly

instructing the jury on the *Williams* rule evidence.  (Respondent's Exhibit 2,

---

[2]  *See Williams v. State*, 110 So. 2d 654 (Fla.), *cert. denied*, 361 U.S. 874 (1959).

Woodall's appellate brief, pp. 7-12)  Woodall failed to alert the state appellate court

of a federal constitutional claim.  *See Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) ("It is

not enough that all the facts necessary to support the federal claim were before the

state courts or that a somewhat similar state-law claim was made.").

Before a federal court may grant habeas relief, a federal habeas petitioner

either on direct appeal or in a state post-conviction motion must exhaust every

available state court remedy for challenging his conviction.  28 U.S.C.

§ 2254(b)(1)(A), (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "[T]he state

prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to a federal court in a habeas petition."  *Boerckel*, 526 U.S. at

842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state

prisoner seeking federal habeas relief cannot raise a federal constitutional claim in

federal court unless he first properly raised the issue in the state courts.") (citations

omitted)).  A federal habeas petitioner "shall not be deemed to have exhausted the

remedies available in the courts of the State . . . if he has the right under the law of

the State to raise, by any available procedure, the question presented."  *Pruitt v. Jones*,

348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process,' including review by the state's court of last resort, even if

review in that court is discretionary."  *Pruitt*, 348 F.3d at 1358-59 (quoting *Boerckel*,

- 3 -

526 U.S. at 845).  To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell,* 416 F.3d at 1302-03 (quotations and citations omitted).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

Woodall did not present to the state appellate court a substantive federal due process claim based upon the allegations he asserts in grounds one and two of his federal petition.  Woodall's failure to present the federal component of either ground on direct appeal deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845.  A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735.  Woodall's exclusively state law arguments on direct appeal leave the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365.  *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").  Consequently, grounds one and two are procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to

raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Glenn*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Woodall fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice. *See Smith*, 256 F.3d at 1138. This failure renders grounds one and two procedurally barred from federal review.

## II.    MERITS

Woodall's remaining grounds, claims of both trial court error and ineffective

assistance of trial counsel asserted in grounds three through eight, are exhausted and

entitled to review on the merits.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs Woodall's petition.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.
> Under § 2254(d)(1), the writ may issue only if one of the following two

conditions is satisfied--the state-court adjudication resulted in a
decision that (1) "was contrary to . . . clearly established Federal Law,
as determined by the Supreme Court of the United States" or (2)
"involved an unreasonable application of . . . clearly established
Federal law, as determined by the Supreme Court of the United
States."  Under the "contrary to" clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court decides
a case differently than this Court has on a set of materially
indistinguishable facts.  Under the "unreasonable application" clause,
a federal habeas court may grant the writ if the state court identifies the
correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, ___

U.S. ___, 131 S. Ct. 770, 786-87 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313

(11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the

state court decision that we are to decide.").  The phrase "clearly established Federal

law" encompasses only the holdings of the United States Supreme Court "as of the

time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694.  A federal

court must afford due deference to a state court's decision.  "AEDPA prevents

defendants—and federal courts—from using federal habeas corpus review as a

vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____

U.S. ____, 130 S. Ct. 1855, 1866 (2010).  *See also Cullen v. Pinholster*, ___ U.S. ___,

131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions

be given the benefit of the doubt' . . . .") (citations omitted).

      In a *per curiam* decision without a written opinion the state appellate court on

direct appeal affirmed Woodall's conviction and sentence.  (Respondent's Exhibit 3)

Similarly, in another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of Woodall's subsequent Rule 3.850 motion to vacate.

(Respondent's Exhibit 10)  The state appellate court's *per curiam* affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245,

1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub*

*nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85

("When a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Woodall bears the burden of overcoming by clear and convincing evidence a state court's factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Woodall's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 8)

## Standard for Ineffective Assistance of Counsel

Woodall claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th

Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented. In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set
> forth a two-part test for analyzing ineffective assistance of counsel
> claims. According to *Strickland*, first, the defendant must show that
> counsel's performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

   *Strickland* requires proof of both deficient performance and consequent

prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two

grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness

claim must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

*Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."  466

U.S. at 690.

Woodall must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  466 U.S. at 691-92.  To meet this burden, Woodall must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on

investigation."  466 U.S. at 690-91.  Woodall cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done.  Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could have
> acted, in the circumstances, as defense counsel acted at trial . . . .  We
> are not interested in grading lawyers' performances; we are interested
> in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Woodall must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

**Ground Three**

Woodall chose not to testify at trial.  Woodall contends that the trial judge

violated his constitutional right to due process by denying his motion for mistrial

based on an improper comment by the prosecutor during closing argument.  Woodall

alleges that the prosecutor, after telling the jury that Woodall had not asserted a clear

defense, improperly stated, "So is the point that [the victim] didn't see what she saw

or is it that it's the wrong person?  And, if so, where's the evidence that it's the wrong

person?  Why?"  Trial counsel objected to the comment and moved for a mistrial.

The trial judge denied the motion and gave a curative instruction to the jury.[3]

Woodall claims that the instruction did not specifically advise the jury that Woodall

---

[3]  The trial judge instructed the jury after the challenged comment:

> Just to clarify on the last comment[s], so that they'll be considered in context.
> It's inappropriate for a prosecutor to comment on a defendant's presumption
> of innocence or to imply that the defendant has a burden to prove anything.
> And I'll give you further instruction at the end of the case.

(Respondent's Exhibit 4, Vol. IV, p. 418)  The state trial court judge reiterated in his final
instructions:

> The State has the burden of proving [that] the crime with which the defendant
> is charged was committed and [that] the defendant is the person who
> committed the crime.  The defendant is not required to present evidence or
> prove anything.
>
> . . . .
>
> The defendant exercised a fundamental right by choosing not to be a witness in
> this case.  You must not view this as an admission of guilt or be influenced in
> any way by his decision.  No juror should ever be concerned that the defendant
> did not take the witness stand to give testimony in the case.

(Respondent's Exhibit 4, Vol. IV, pp. 466, 469)

had a right to remain silent and that the jury could have construed the prosecutor's

comments to mean that Woodall was obligated to present some evidence that he was

not the perpetrator.  The state district court of appeal rejected this ground in a *per*

*curiam* decision without a written opinion.

A prosecutor cannot comment on the accused's silence at trial and cannot ask

the jury to draw an adverse inference from that silence.  *United States v. Robinson*, 485

U.S. 25, 32 (1988); *Griffin v. California*, 380 U.S. 609, 615 (1965).

> The Fifth Amendment prohibits a prosecutor from commenting
> directly or indirectly on a defendant's failure to testify.  A prosecutor's
> statement violates the defendant's right to remain silent if either (1) the
> statement was manifestly intended to be a comment on the defendant's
> failure to testify, or (2) the statement was of such a character that a jury
> would naturally and necessarily take it to be a comment on the failure
> of the accused to testify.  The question is not whether the jury possibly
> or even probably would view the remark in this manner, but whether
> the jury necessarily would have done so.

*United States v. Blankenship*, 382 F.3d 1110, 1128 (11th Cir. 2004) (quoting *United*

*States v. Knowles*, 66 F.3d 1146, 1162-63 (11th Cir. 1995)).  A defendant bears the

burden of proving one of the two criteria to substantiate a claim that the prosecutor

violated his right to remain silent.  *Knowles*, 66 F.3d at 1163.

The challenged comment, taken in proper context, is a comment on Woodall's

theory of defense and not his right to remain silent.[4]  Woodall demonstrates neither

---

[4]  The prosecutor argued:

> And one thing that I hope you'll ask yourselves, because I'm not going to take
> a long time to argue now, I'm going to sit down in a few minutes and let
> [defense counsel] argue to you, but one thing I'd like you to think about when
> [defense counsel] is up here is what is the defense in this case?

(continued...)

that the prosecutor's isolated remark was manifestly intended as a comment on Woodall's failure to testify nor that the jury necessarily interpreted the remark as a comment on Woodall's failure to testify, *Blankenship*, 382 F.3d at 1128, particularly in light of the curative instruction.  *See, e.g., United States v. Williams*, 341 Fed. Appx. 599, 601-02 (11th Cir. 2009) ("Assuming arguendo that the prosecutor's statements were improper, the error was rendered harmless by the court's curative instructions, and, in light of the instructions, there is nothing to suggests the jury improperly relied on the prosecutor's remarks.")*; Hill v. Turpin*, 135 F.3d 1411, 1417 (11th Cir.1998) (cataloging cases in which the court has held a prosecutor's comment on silence harmless, including when "the improper reference was 'isolated' or 'unintentional' or promptly addressed by a curative instruction from the trial court"); *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions.") (quotation marks omitted).

Woodall fails to show that the state court's rejection of this ground is either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.

---

[4](...continued)

> Are they saying that [the victim] was not the victim of an exposure?  Are they saying that she didn't see his penis?  Because you'll recall there were a number of questions of [the victim's brother], for example, "Didn't she say she didn't see it?  Did your mother say she didn't see it?"  *So is the point that she didn't see what she saw or is it that it's the wrong person?  And if so, where's the evidence that it's the wrong person?  Why?*

(Respondent's Exhibit 4, Vol. V, p. 413) (emphasis added)

**Ground Four**

Woodall contends that his trial counsel rendered ineffective assistance by not seeking suppression of all identification testimony from the victim, the victim's mother, and Detective Jackie Pehote. Woodall claims that counsel knew (1) that the photographic line-up singled him out, (2) that Detective Pehote proceeded with the photographic line-up after advising the victim's mother that a suspect matching a composite sketch of the alleged perpetrator had been arrested and that Pehote later lied about telling the mother this information, (3) that the victim and her mother were in the same room when the mother identified Woodall in the photographic line-up, and (4) that Detective Pehote lied about the victim identifying Woodall in the photographic line-up.

The state post-conviction court conducted a lengthy evidentiary hearing on this ground. Both of Woodall's trial attorneys, Larry Hart and Deborah Moss, testified (Respondent's Exhibit 7, pp. 6-60) that they chose not to suppress the identifications for strategic reasons so that Woodall could present a misidentification defense at trial.

After thoroughly reviewing trial counsels' extensive testimony in the evidentiary hearing, the state post conviction court rejected this ground (Respondent's Exhibit 8, final order denying Rule 3.850 motion, pp. 1-4):

> A hearing was directed on Defendant's claim . . . that trial counsel,
> Larry Hart and Deborah Moss, were ineffective for failing to file a

motion to suppress the photo pack identification.  Defendant was represented at the evidentiary hearing [by counsel].

Defendant exposed himself to the victim in a store and the victim's mother confronted the Defendant after it was reported to her.  The victim and her mother described the suspect as having a pock-marked face and being considerably taller and heavier than Defendant.  The victim's mother subsequently identified Defendant from a six person photo pack but the victim selected a different person from the photo pack.  Only after the mother identified the Defendant did the daughter agree that he was the one who exposed himself to her.  Therefore, identification was a significant issue in this case.

Defendant alleges that the identification was tainted because the victim and her mother were both in the same room at the time and because Defendant was the only person in the photo pack who was wearing a white t-shirt, which is what the suspect was described as wearing.  Defendant claims counsel should have moved to suppress the photo pack identification on that basis.

Larry Hart testified that he didn't believe there were any problems with the identification procedurally that would be sufficient for a motion to suppress to be successful.  Because the victim did not identify the Defendant from the photo pack, there was no identification to suppress in that instance.  Moreover, there were other strategic reasons not to file the motion.  Because the description of the suspect was significantly different than Defendant's appearance, and because the victim was unable to identify the Defendant from the photo pack, identification was a significant part of the defense in this case.  Counsel's strategy was to argue the discrepancies in the identification rather than to try to suppress the identification.

According to Mr. Hart, the most significant reason for not filing a motion to suppress was that, had he done so, he believed it would prompt the State to look more closely at the discrepancies in the description.  Based on his prior experience as a prosecutor, Mr. Hart believed the State would attempt to have the videotape of the victim's mother confronting the suspect in the store enhanced if a motion to suppress was filed.  In its original form, the videotape was grainy and did not clearly show the suspect.  Mr. Hart testified that, based on his conversations with Defendant, he knew that the

person in the videotape was Defendant and any enhancement could reveal that fact.

Mr. Hart testified that he had several meetings with Defendant, including one that was specifically regarding the possibility of filing a motion to suppress. Mr. Hart recommended that they not file the motion for the reasons previously discussed but informed Defendant that the decision was his. Defendant agreed that the motion should not be filed.

Deb[orah] Moss also testified that, although she would have argued it if a motion to suppress had been filed, the fact that the Defendant was the only one in the photo pack wearing a white t-shirt was insufficient to taint the identification process. Ms. Moss agreed that their strategy was to point out that the victim picked another person from the photo pack, then to point out all the other discrepancies in the description. The daughter was the only one who saw the perpetrator at the time of the offense. The discrepancies and the fact that the daughter picked someone else from the photo pack could have been used to suggest that, even if the mother correctly identified the person her daughter identified in the store and shown on the videotape, that the victim identified the wrong person to her mother in the store.

Based on a review of the Defendant's motion , the court file, and the testimony and argument presented at the evidentiary hearing, the court finds that Defendant did not receive ineffective assistance of counsel and the motion is denied. There is nothing in the photo pack that appears at all suggestive. There is some evidence of suggestiveness in the procedure used in having the mother and daughter view the photo pack in the same room, but it was not unduly suggestive. Based on the facts of the case, there is no way the motion to suppress would have been successful. Even if it were, that would not taint the in-court identification. Nor would it diminish the fact that the remainder of the evidence, including the videotape and evidence of other similar offenses, was sufficient to sustain a conviction at trial.

It is clear that the decision [not] to pursue a motion to suppress was a rational and reasonable strategic decision based on both the decision to pursue a defense of misidentification and on the desire to avoid having the State enhance the videotape. Although Ms. Moss seemed to be unaware of the specific issue of the possible enhancement of the videotape, her general memory of the case was

> sketchy.  Mr. Hart had a longer association with Defendant and an
> obviously better memory of the case.  The court finds no error on
> the part of counsel in failing to file a motion to suppress.
>
> Moreover, Mr. Hart's unrebutted testimony was that he discussed a
> motion to suppress with Defendant, that Defendant was made
> aware of the issues and problems surrounding the motion, and that
> pursuing the motion could be detrimental to Defendant.
> Defendant understood Mr. Hart's assessment and made the
> decision not to pursue a motion to suppress.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314.  "The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002).  Trial counsel must decide which strategic and tactical option to pursue.  *See e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.'").  A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy.  *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.

Woodall fails to overcome the presumption that trial counsel's decision to forego moving to suppress the identification testimony was anything other than trial strategy. *Strickland*, 466 U.S. at 689; *Perry*, 908 F.2d at 59. Woodall fails to show that if counsel had moved to suppress the identifications and the state trial court had granted the motion, the jury would have acquitted him. Absent a showing of prejudice, Woodall's ground warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. Woodall fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting these grounds.

**Grounds Five and Six**

The prosecutor moved before trial to permit *Williams* rule evidence about Woodall previously exposing himself in a lewd and lascivious manner to another child in a separate incident. Following a pre-trial evidentiary hearing, the trial judge granted the prosecutor's motion.[5] In grounds five and six of his federal petition

---

[5] The prosecutor moved to introduce testimony from four witnesses about Woodall exposing himself to a child in a Wal-Mart store in a separate case from another county. The trial judge ruled that the evidence was admissible in Woodall's trial:

> [T]he court finds that the incident in Hernando County is hereby admissible, since the actions testified as to the Defendant in Hernando County are quite similar to the events that occurred in Pasco County . . . . [T]he court makes the following specific findings of similarity in that the events testified to in both incidents occurred in major large retail establishments which are identical in activity, the establishments both cater to the public, such as to women, children, and men, as well as children accompanied by their parents; that the Defendant exposed himself to children under the age of 16 years, more particularly to females, and the court makes a finding that it is a unique situation to allow the Hernando County evidence [to] be admissible under the Pasco County matter.

(Respondent's Exhibit 4, Vol. I, p. 32)

Woodall contends that his counsel rendered ineffective assistance by both not moving to suppress evidence of the collateral offense and not moving in limine to minimize "the quantum of *Williams* rule evidence."

The state post-conviction court rejected both grounds (Respondent's Exhibit 8, order denying in part Woodall's Rule 3.850 motion, p. 2) (court's record citation omitted):

GROUND [FIVE]

Defendant claims trial counsel was ineffective for failing to seek suppression or limitation of testimony and evidence of collateral offenses.  This claim is without merit.  The collateral offense defendant refers to was the subject of a *Williams* Rule hearing.  The court heard testimony and argument from both sides regarding whether the previous act could be used in the instant trial.  The court ruled that the evidence was admissible.  Counsel argued against the admissibility of such evidence; therefore, counsel was not ineffective.  This claim is denied.

GROUND [SIX]

Defendant claims trial counsel was ineffective for failing to effectively advocate suppression or limit introduction of *Williams* Rule evidence.  Defendant fails to allege any specific facts in regards to how exactly counsel was ineffective in his argument against allowing the *Williams* Rule evidence.  As stated [above], the court ruled as to whether there were enough similarities in the acts to allow it in the instant trial.  Any issues regarding the court's ruling should have been raised on direct appeal.  This claim is denied.

Woodall fails to establish that the evidence of his collateral offense was inadmissible and subject to either suppression or limitation.  Even assuming that counsel performed deficiently by not moving to either suppress or limit the evidence, Woodall fails to demonstrate that absent counsel's alleged error the jury would have

- 22 -

acquitted him.  He likewise fails to overcome with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's factual determination that counsel argued against the admissibility of the evidence. Woodall's failure to satisfy either *Strickland's* deficient performance requirement or prejudice requirement precludes relief on grounds five and six.

**Ground Seven**

Woodall contends that his trial counsel rendered ineffective assistance by not moving for a mistrial after three witnesses gave surprise testimony at trial.  First, Woodall claims that, during their depositions, Yvonne Bayoff (the victim's mother) and sketch artist Darcy Ganter stated that the composite sketch of the perpetrator was based mainly on the victim's description because Bayoff could not recall the perpetrator's facial features.  Contrary to the depositions, Bayoff and Ganter both testified at trial that Bayoff gave a "positive and certain" identification of the perpetrator.  Woodall argues that this "change in testimony was extremely significant [because] it targeted the reliability of Ms. Bayoff's identification."  (Doc. 1, p. 13)

Second, Woodall alleges that in her deposition Bayoff explicitly testified about suggestive information relayed to her by Detective Pehote before Bayoff viewed the photographic line-up.  Woodall claims that in her deposition Detective Pehote "blatantly lied about the use of two Polaroid photos[6] during the photo[graphic]

---

[6]  When the police initially met with Woodall, Detective Pehote took two Polaroid photographs of him.  After Bayoff identified Woodall in the photographic line-up, Detective Pehote showed Bayoff the two Polaroid photographs and Bayoff again confirmed that Woodall was the man she encountered at the K-Mart.  (Respondent's Exhibit 4, Vol. IV, pp. 237-38)

line-up," stating that she did not use the photographs after taking them.  Woodall claims that both witnesses changed their testimony at trial:  "Ms. Bayoff denied being told anything about [Woodall]'s arrest or that [he] purportedly looked like the composite, and Detective Pehote admitted at trial that the Polaroids had, in fact, been used during the photo[graphic] line-up."  (Doc. 1, p. 13)  Woodall asserts that counsel should have moved for a mistrial because the changes in testimony deprived him of a fair trial.

The state post-conviction court rejected this ground (Respondent's Exhibit 8, order denying in part Woodall's Rule 3.850 motion, p. 2) (court's record citation omitted):

> Defendant claims trial counsel was ineffective for failing to seek a mistrial upon surprise or false testimony of [the] State's witnesses. Defendant claims that based upon the deposition of the victim's mother and Darcy Ganther [sic], the sketch artist, he believed the primary contributor to the sketch to be the victim.  The mother stated in her deposition that both she and her daughter participated in the sketch. Ms. Ganther [sic] did testify . . . at trial . . . that she stated in her deposition that the victim was the only one that participated in the sketch.  Ms. Ganther [sic] also testified at trial that she was confused at the deposition as to who saw what but she believed that both mother and daughter contributed to the sketch.  Ms. Ganther [sic] testified that she had been confused at the deposition; therefore, there is no indication that [she] was giving false testimony at trial.  Any inconsistencies in [her] testimony were subject to cross-examination, which was done by trial counsel.  There was no good faith basis upon which counsel could have moved for a mistrial; therefore, counsel was not ineffective.  This claim is denied.[7]

---

[7]  Although Woodall presented in his Rule 3.850 motion his allegations about Bayoff and Detective Pehote changing their testimony, the state post-conviction court did not address these allegations in the order denying the motion.  To the extent that he asserts these allegations as independent claims

(continued...)

While Woodall's ineffective assistance ground is of federal constitutional dimension, his underlying claim challenging the application of state procedural rules is a matter of state law. Both the state post-conviction court in rejecting this ground of ineffective assistance of counsel and the state district court of appeal in affirming that rejection have answered the question of what would have happened if counsel had moved for a mistrial. *See Duest v. State*, 462 So. 2d 446, 448 (Fla. 1985) (In Florida, "a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial."). *See also Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for

---

[7](...continued)
of either ineffective assistance of counsel or denial of due process for not moving for a mistrial, Woodall cannot obtain relief because he fails to establish both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 691-92. Woodall likewise fails to establish a federal due process violation.

failing to make that objection."). Woodall shows neither deficient performance nor resulting prejudice from counsel's failure to move for a mistrial. *Strickland*, 466 U.S. at 691-92. This ground warrants no relief because Woodall fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground.

**Ground Eight**

Woodall contends that the cumulative effect of counsel's errors presented in grounds four through seven[8] of his federal petition resulted in a denial of both his right to the effective assistance of counsel and his right to due process. The state post-conviction court summarily rejected this ground without elaborating. (Respondent's Exhibit 8, order denying in part Woodall's Rule 3.850 motion, p. 3)

"Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is

---

[8] In addition to the claims of ineffective assistance of counsel presented in grounds four through seven of the federal petition, Woodall asserts additional claims of ineffective assistance of counsel (failing to impeach witnesses, requesting an erroneous jury instruction, failing to move for mistrial based on prosecutorial misconduct during the prosecutor's opening statement) to support his cumulative error claim. Woodall did not present the additional claims as independent substantive grounds for relief in either the Rule 3.850 motion or the federal petition. Consequently, those grounds remain unexhausted. The grounds cannot support a cumulative error claim because Woodall establishes neither deficient performance nor resulting prejudice. *Strickland*, 466 U.S. at 691-92.

[his] due under our Constitution.") (quoting *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir. 1983)).  Because each individual ground of error lacks merit, no cumulative prejudicial effect results.  *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).  Woodall fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting  this ground.

Accordingly, Woodall's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Woodall and close this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Woodall is not entitled to a certificate of appealability  ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA,

Woodall must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).

Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Woodall cannot meet *Slack's* prejudice requirement. 529 U.S. at 484. Finally, Woodall is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Woodall must pay the full $455 appellate filing fee without installments unless the circuit court allows Woodall to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on February 4, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 28 -